**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN S. MEANY, JR.,** | : | **Case No. 1:07-CV-1243** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN M. O'MALLEY** |
| **v.** | : | |
| **HMI INDUSTRIES, INC.,** | : | <u>**OPINION & ORDER**</u> |
| **Defendant.** | : | |

Three motions are currently pending before the Court in this breach of contract action between Plaintiff John S. Meany, Jr. and Defendant HMI Industries, Inc. ("HMI"):

(1)     HMI's *Motion for Summary Judgment* (Doc. 22);

(2)     Meany's *Motion for Leave to File a Sur-Reply to Defendant HMI's Supplemental Reply Memorandum in Support of its Motion for Summary Judgment Instanter* (Doc. 30) ("Motion for Leave to File a Sur-Reply"); and

(3)     HMI's *Motion to Strike Plaintiff's Sur-Reply Memorandum in Opposition to Motion for Summary Judgment and Affidavit* (Doc. 36) ("Motion to Strike Meany's Sur-Reply and Affidavit").

After careful consideration, and for the reasons articulated below, the Court resolves the three pending motions as follows:

(1)     HMI's Motion for Summary Judgment (Doc. 22) is **<u>DENIED</u>**;

(2)     Meany's Motion for Leave to File a Sur-Reply (Doc. 30) is **<u>DENIED</u>**; and

(3)     HMI's Motion to Strike Meany's Sur-Reply and Affidavit (Doc. 36) is **<u>GRANTED</u>**.

## I. **BACKGROUND**

On April 26, 2007, Meany filed this action against HMI, his former employer, asserting a single claim for breach of contract.  (Doc. 1.)  Meany alleges that:  (1) he and HMI entered into a valid and binding employment agreement that was memorialized in a letter dated March 1, 2002 and signed by him and James Malone, HMI's then Chairman of the Board of Directors ("Board") and Chief Executive Officer ("CEO"); and (2) HMI, through the actions of Kirk Foley, HMI's current Chairman of the Board and CEO, subsequently breached this agreement in 2005 when it unilaterally implemented changes to the terms of the agreement and refused to pay a severance.

HMI has now moved for summary judgment on Meany's breach of contract claim.  (Doc. 22.)  HMI first argues that there was not a valid and binding agreement between Meany and HMI.  Specifically, HMI contends that Meany's purported employment agreement was invalid under HMI's Bylaws as amended on February 14, 2002, because:  (1) the Amended Bylaws required, in pertinent part, that all agreements with HMI officers or stockholders that owned at least 5% of HMI's shares be approved by HMI's Board or its Compensation Committee; (2) after HMI's Bylaws were amended on February 14, 2002, Meany was an HMI officer and a stockholder that owned at least 5% of HMI's shares; and (3) the agreement was never approved by HMI's Board or its Compensation Committee.  HMI also argues that Meany should be equitably estopped from claiming that the purported employment agreement binds HMI, because Meany, as HMI's former legal counsel, corporate secretary, and ethics code administrator, knew of and had advised HMI on its Amended Bylaws and therefore should have been aware that his agreement was invalid under the Amended Bylaws without Board or Compensation Committee approval.

-2-

Meany has opposed HMI's motion for summary judgment by asserting three primary arguments. First, Meany argues that his employment agreement was valid and binding on HMI, because the agreement was negotiated and agreed to by Malone before the Bylaws were amended on February 14, 2002 and thus did not need to be approved by HMI's Board or its Compensation Committee. Second, Meany argues in the alternative that, even if the Court finds that the employment agreement was subject to the Bylaws as amended on February 14, 2002, Malone had the apparent authority to enter into an employment agreement with Meany on behalf of HMI, and Meany detrimentally relied on the assumption that the agreement was in fact valid, with all necessary approvals having been obtained. And third, again in the alternative, Meany argues that HMI should be estopped from asserting its defense that the employment agreement is invalid.

After HMI's Motion for Summary Judgment was fully briefed (*see* Docs. 22, 24, 26), Meany located a flash drive with HMI-related documents that were not produced during discovery, and the parties filed a joint motion to postpone the Court's ruling pending additional limited discovery and an opportunity for supplemental briefing (Doc. 27). The Court granted the parties' joint motion in a non-document Order dated July 9, 2008, and the parties conducted additional discovery and filed supplemental briefs (Docs. 28-29).

In response to HMI's supplemental brief, Meany then filed the pending Motion for Leave to File a Sur-Reply, attached the sur-reply, and later filed an affidavit in support of the sur-reply. (Docs. 30, 33-34.) HMI opposed Meany's Motion for Leave to File a Sur-Reply (Doc. 35) and filed the pending Motion to Strike Meany's Sur-Reply and Affidavit (Doc. 36). Meany has not responded to either of HMI's filings.

## II. <u>STATEMENT OF FACTS</u>

Much of the discussion with respect to HMI's Motion for Summary Judgment focuses on whether there was a valid and binding employment agreement between Meany and HMI.  In this regard, as further elaborated below, the following notable facts are undisputed by the parties:

- Prior to the amendment of HMI's Bylaws on February 14, 2002, Malone, as HMI's then Chairman of the Board and CEO, had full authority to enter into employment agreements on behalf of HMI.  (*See* Malone Dep. at 75:12-20, February 15, 2008);

- Meany and Malone began to negotiate Meany's employment agreement with HMI at some point in late November or early December of 2001 (Meany Dep. at 54:7-13, 94:7-23, January 14, 2008; Malone Dep. at 72:4-20, 74:15-24);

- The terms of the agreement eventually reached between Meany and Malone – notwithstanding whether the agreement is indeed valid and binding on HMI – were memorialized in a letter dated March 1, 2002 and signed by both Meany and Malone (Meany Dep. at Ex. B; Malone Dep. at Ex. B; *see generally* Docs. 22, 26, 29);

- After HMI's Bylaws were amended on February 14, 2002, Meany was an HMI officer and a stockholder that owned at least 5% of HMI's shares (Meany Dep. at 120:7-22; *see also* Doc. 24 at 9); and

- Meany's employment agreement as memorialized by the letter dated March 1, 2002 and signed by Meany and Malone was never approved by HMI's Board or its Compensation Committee (Meany Dep. at 133:24-136:17; Walker Aff. at ¶¶ 10-11; *see generally* Docs. 24, 28).

The parties, however, specifically dispute when Meany and Malone actually reached an agreement – *i.e.*, whether Meany and Malone reached an agreement only after HMI's Bylaws were amended on February 14, 2002, such that Meany's employment agreement was required to be approved by HMI's Board or its Compensation Committee in order to be valid and binding on HMI under its

-4-

Amended Bylaws.[1]

## A.      THE AMENDMENT OF HMI'S BYLAWS ON FEBRUARY 14, 2002

In October 2001, Foley, then merely an HMI shareholder,[2] formed a voting trust with other HMI shareholders and filed a Schedule 13D with the Securities and Exchange Commission in an attempt to increase oversight of HMI's operations.  (*Id.* at 36:24-38:7, Exs. 2 & 2A.)  In particular, Foley and the members of the voting trust sought to implement measures to prevent self-interested transactions by individual Board members or executive officers without express approval from the entire Board, such as the formation of contracts between HMI and directors, officers, or certain shareholders.  (*Id.* at 32:4-34:11, 48:7-49:25, 50:23-51:18, Exs. 2 & 2A.)

After a period of negotiations between Foley and Malone, HMI's then Chairman of the Board and CEO,[3] HMI and the voting trust entered into a settlement agreement on February 14, 2002 that, among various other changes, provided for the amendment of HMI's Bylaws.  (Foley Dep. at 34:12-38:7, 56:8-13, Exs. 2 & 2A.)[4]  As is critical here, HMI's Bylaws were amended to include the

---

[1] In addition to this primary factual dispute, the statement of facts articulated below specifically identifies each factual dispute between the parties; otherwise, if not specifically identified, a fact is not deemed to be in dispute.
    The separate and legally dispositive issue as to whether any of the disputed facts amount to a "genuine issue" of "material fact" under the summary judgment standard stated in Rule 56 of the Federal Rules of Civil Procedure will be addressed in detail below in the Law & Analysis section.

[2] As noted, Foley is HMI's current Chairman of the Board and CEO.  (Foley Dep. at 10:5-12:22, February 19, 2008.)  Foley became Chairman and CEO in 2004, succeeding Malone. (*Id.*)  Previously, Foley served as HMI's President and CEO from approximately 1990 to 1997. (*Id.*)

[3] Malone was HMI's Chairman of the Board and CEO from approximately 1997 until 2004.  (Malone Dep. at 12:16-16:12.)

[4] Among the various other changes, the settlement agreement reduced the size of HMI's Board from nine to six directors.  (*Id.* at Ex. 2.)

requirement that, as of February 14, 2002, approval from either eighty percent of the Board or the Board's Compensation Committee was necessary in order to form or modify contracts between HMI and its directors, officers, and certain shareholders:

> Until the election of directors at the 2003 Annual Meeting of Stockholders, the following matters shall require the approval of at least 80% of the directors in office:
>
> * * *
>
> 12.    A proposal to enter into or modify an agreement, transaction or arrangement with any of its officers, directors, or 5% or greater stockholder, or any of their respective affiliates, except for compensation or benefit arrangements as approved by the Compensation Committee.

(*Id.* at Ex. 2A.)

As noted, however, it is undisputed that prior to this amendment, HMI had delegated to Malone, its then Chairman of the Board and CEO, the full authority to enter into employment contracts on behalf of HMI.  (*See* Malone Dep. at 75:12-20; *see also id.* at 43:10-25.)

## B.    MEANY'S EMPLOYMENT AGREEMENT WITH HMI MEMORIALIZED IN A LETTER DATED MARCH 1, 2002 AND SIGNED BY MEANY AND MALONE

Meanwhile, shortly after Foley and the voting trust filed their Schedule 13D with the SEC, Meany and Malone began to negotiate Meany's employment agreement with HMI in approximately late November or early December of 2001.  (Meany Dep. at 54:7-13, 94:7-23; Malone Dep. at 72:4-20, 74:15-75:20.)  As of that time, Meany had long been affiliated with HMI in various capacities, having been a stockholder, employee (including general counsel), consultant, corporate secretary, ethics code administrator, and/or board member of HMI since January 1978.  (Meany Dep. at 12:24-23:15, 85:1-13, 120:7-22.)  Specifically, as of late November or early December of 2001, Meany owned HMI shares, was a member of HMI's Board, served as HMI's corporate secretary, administrated HMI's ethics code, and worked for HMI as a non-employee consultant, occasionally

receiving assignments from HMI's then general counsel, Carl Young.  (*Id.*)  Malone wanted Meany to once again become HMI's general counsel, because Young was scheduled to retire effective March 1, 2002.  (*Id.* at 20:19-23, 94:7-23.)

As noted, however, the parties vigorously dispute when Meany and Malone actually reached an agreement on the terms of Meany's employment with HMI.

For example, in Meany's filings opposing HMI's motion for summary judgment, Meany contends that he and Malone orally agreed on the terms by late December 2001 or early January 2002 or, at minimum, prior to the amendment of HMI's Bylaws on February 14, 2002 and that the letter dated March 1, 2002 and signed by both Meany and Malone only confirmed what the parties had agreed to earlier.  (*See* Doc. 24 at 2-3, 9-13; Doc. 28 at 3-8.)  As evidentiary support for this position, Meany cites the following:

- The text of the letter dated March 1, 2002 and signed by Meany and Malone, which provides that the purpose of the letter is "to confirm the terms and conditions" of Meany's employment with HMI and specifically acknowledges that the terms and conditions outlined therein were believed to be "consistent with the prior discussions" between Meany and Malone (Meany Dep. at Ex. B); and

- Deposition testimony by Meany and Malone indicating that the letter dated March 1, 2002 was merely a memorialization of what the parties previously had agreed to sometime after negotiations commenced in late 2001 (*Id.* at 51:15-52:19, 54:3-13, 94:7-23, 97:4-22; Malone Dep. at 72:4-20, 74:15-24).

HMI, on the other hand, asserts that Meany's contention that he reached an oral agreement with Malone prior to the amendment of HMI's Bylaws on February 14, 2002 is unsupported by any evidence and that, in fact, the evidence demonstrates that Meany continued to negotiate the terms of his employment after HMI amended its Bylaws and at least until December 31, 2002. Specifically, HMI first notes that Meany himself never testified that he had reached an oral agreement with Malone prior to February 14, 2002 and that a review of the deposition testimony

cited by Meany reveals that he only testified as to general negotiations that "may have started in late

'01" (Meany Dep. at 54:3-13), or that "discussions were in November or December of '01" (*Id.* at

94:7-23), or that "[he and Malone] had started discussing my employment back in November or

December, but we hadn't finalized anything" (*Id.* at 97:4-22).  HMI also contends that Malone's

deposition testimony fails to support Meany's contention that there was a previous oral agreement,

arguing that Malone's testimony was based upon a false assumption, was speculative, and had no

probative value.  And finally, HMI cites documentary evidence that it argues shows that Meany

negotiated and drafted his employment agreement after having knowledge of HMI's Amended

Bylaws and that Meany backdated the March 1, 2002 letter signed by him and Malone and did not

actually draft the letter until December 31, 2002.  In this regard, HMI points to the following

documents:

- A letter dated February 27, 2002 to Meany from Jude Nohra, an attorney at Squire, Sanders & Dempsey L.L.P., in which Nohra writes that she was forwarding Meany copies of various HMI-related documents, including a copy of HMI's Bylaws as amended on February 14, 2002 (Doc. 29-2);[5]

- A memorandum dated March 4, 2002 to Malone from Meany, in which Meany inquires who should draft his employment letter (Meany Dep. at

---

[5] HMI, however, did not authenticate that this letter and the copies of the HMI-related documents were sent to Meany by attaching an affidavit or declaration from Jude Nohra.  (*Id.*) Rather, HMI attached the declaration of Richard Gurbst, a partner at Squire, Sanders & Dempsey L.L.P., who could not "confirm that the enclosures as set forth in the letter were actually set forth as enclosures in the original letter because the events described took place six years ago." (Gurbst Decl. at ¶ 5.)

158:16-162:7, Ex. E);[6]

- A memorandum dated March 6, 2002 to Malone from Meany, in which Meany generally advises Malone as to what HMI's Amended Bylaws stated with respect to committee chairmen (*Id.* at 166:20-172:8, Ex. F);[7]

- A memorandum dated March 7, 2002 to Malone from Meany, in which Meany encloses a proposed employment letter and discusses the procedure for potential changes to the enclosed letter (Doc. 28-3);[8]

---

[6] Meany's memorandum to Malone dated March 4, 2002 provides in pertinent part:

I spoke to Carl last week about my employment letter.  He indicated that he might do it or have Carolyn do it.  An alternative is for me to prepare the letter (after all, I am one of the parties to it) based upon prior employment letters with you, John and Julie and reflecting our arrangement.  I can review it with Carl or Carolyn if you like and then review it with you prior to your signature.  Let me know how you want to proceed.

(*Id.* at Ex. E.)

[7] Meany's memorandum to Malone dated March 6, 2002 provides in relevant part:

The unanimous consent of directors dated February 14 approving the settlement with Kirk Foley and other issues established the new membership of the standing committees of the board.  The new bylaws adopted by that unanimous consent provide that the chairman of each committee may be chosen by majority vote of the whole board, and if that is not done then each committee elects its chairman. . . .

(*Id.* at Ex. F.)  The memorandum, however, does not include a specific reference to the requirement in the Amended Bylaws that is at issue here, *i.e.*, that all agreements with HMI officers or stockholders that owned at least 5% of HMI's shares after February 14, 2002 had to be approved by HMI's Board or its Compensation Committee.  (*See id.*)

[8] Meany's memorandum to Malone dated March 7, 2002 provides in its entirety:

Attached are two copies of my proposed employment letter.  If you find it in order, please sign both copies and send to me for my acceptance.  I will return one signed copy to you for the Company's record.  A copy of this employment letter has been emailed to Kelly Boehlefeld.  If changes are required, Kelly can make them on her copy.  If you want to make changes, please discuss with me the provision which you want to change.

(Doc. 28-3.)

- Meany's proposed employment letter last saved on March 7, 2002 and backdated to March 1, 2002 that included terms that were different than the March 1, 2002 employment letter signed by Meany and Malone (Doc. 28-2);[9] and

- A memorandum dated December 31, 2002 to Malone from Meany, in which Meany encloses a revised version of his employment letter with HMI, along with a change of control agreement that Meany prepared for another HMI employee, Darrell Weeter (Meany Dep. at 139:16-145:9, Ex. C).[10]

In addition to the dispute as to when Meany and Malone actually reached an agreement, the parties also dispute whether Foley had any involvement with the negotiation of Meany's employment agreement in late 2001 and early 2002.  Meany, for his part, cites the deposition testimony of Malone, in which Malone testified that he discussed Meany's employment agreement

---

[9] HMI notes that Meany's proposed employment letter last saved on March 7, 2002 differed from the March 1, 2002 employment letter signed by Meany and Malone in two respects:  (1) paragraph 2 of both documents contain slightly different language regarding reimbursement for living expenses in Cleveland; and (2) the proposed employment letter last saved on March 7, 2002 includes an additional paragraph on liability that the March 1, 2002 employment letter signed by Meany and Malone did not contain.  (*Compare* Doc. 1-2 *with* Doc. 28-2.)

[10] Meany's memorandum to Malone dated December 31, 2002 provides in relevant part:

I am also enclosing two copies of my employment letter.  I have revised it from the prior letter given to you in order to reflect the actual terms of my employment from what we had discussed.  The one part I did not change in the letter but that changed in practice related to my vacation.  In view of my prior 13+ years of service as an employee of HMI (1978-1991) I am requesting four weeks of vacation instead of three weeks.  I don't know that I will take it each year, but I would like to have the option available to me. . . . Assuming that my letter is in order, please bring it with you next week if you come to Cleveland, or mail it to me in Cleveland. . . .

(*Id.* at Ex. C.)

-10-

with Foley during negotiations with Meany.  (Malone Dep. at 31:11-32:8, 54:22-60:6.)[11]  In fact, according to Malone, it was Foley's idea to include a term in Meany's employment agreement to permit Meany to work from his home in Chicago, Illinois in order to reduce Meany's travel expenses to and from HMI's offices in Cleveland, Ohio.  (*Id.* at 59:22-60:6; Doc. 1-2 at ¶ 2.)  By contrast, HMI cites the deposition testimony of Foley, in which Foley denied that he had seen Meany's employment agreement or had discussed any of Meany's specific employment terms with Malone prior to the amendment of HMI's Bylaws on February 14, 2002.  (Foley Dep. at 46:14-49:25.)  Foley also specifically denied that he had recommended that Meany work from Chicago.  (*Id.* at 70:14-71:4.)  Further, Foley testified that he first became aware of the existence of Meany's employment agreement – or at least the letter dated March 1, 2002 and signed by Meany and Malone – in late 2004 or early 2005.  (*Id.* at 75:18-77:22.)

However, as noted, notwithstanding the parties' aforementioned disputes surrounding the formation of Meany's employment agreement with HMI, it is undisputed that the terms of the

---

[11] Notably, Malone testified as follows in regards to Foley's knowledge of the existence of Meany's employment agreement with HMI:

Q.      You are aware of what this lawsuit is all about as --

A.      I am.

Q.      A purported employment contract between HMI and John Meany.

A.      The only thing I object to in that is purport.  I mean, to me, and I've said it to your colleagues, I've said it to anybody who would ever listen to me, that there isn't anything purported about it.  It was done.  It was – Mr. Foley can deny that he was aware of it till the cows come home, but he's wrong.  That's revisionist history, and I just want to be on the record that that is absolutely revisionist.  It exists.  It was done.  And he was aware of it.

(*Id.* at 31:16-32:8.)

agreement eventually reached between Meany and Malone were memorialized in a letter dated March 1, 2002 and signed by both Meany and Malone.  (Meany Dep. at Ex. B; Malone Dep. at Ex. B; *see generally* Docs. 22, 26, 29.)  This letter sought "to confirm the terms and conditions" of Meany's employment as vice president, corporate secretary, and general counsel of HMI "beginning on March 1, 2002 and continuing for an indefinite period," subject to the severance provision outlined therein.  (Meany Dep. at Ex. B.)  Notable terms and conditions in the letter included the following:

- HMI agreed to pay Meany an annual salary of $150,000;[12]

- Meany could perform his duties from Chicago, Illinois, and HMI agreed to reimburse Meany for travel expenses between Chicago and Cleveland and to provide an allowance for his living expenses in Cleveland;

- Meany was eligible to participate in HMI's Incentive Bonus Plan and its 1992 Omnibus Long-Term Compensation Plan;

- Meany was entitled to four weeks vacation; and

- Meany was entitled to a severance payment consisting of his salary and other contractual benefits for one year after termination of his HMI employment,

---

[12] Meany's salary was increased by 5% in the fall of 2003 after a performance appraisal, so that Meany's annual salary was $157,500.  (Foley Dep. at Ex. 11.)

-12-

provided that his employment was terminated without cause.[13]

(*Id.*)

Also, as noted, it is undisputed that after HMI's Bylaws were amended on February 14, 2002, and at all relevant times thereafter, Meany was an HMI officer, *i.e.*, HMI's corporate secretary, and a stockholder that owned at least 5% of HMI's shares.  (*Id.* at 120:7-22; *see also* Doc. 24 at 9.) Meany retained this affiliation with HMI, as well as his role as HMI's ethics code administrator, even though he resigned from the Board as a result of the February 14, 2002 settlement agreement between HMI and the voting trust led by Foley.  (Meany Dep. at 20:8-12, 85:1-13, 95:24-96:24, 120:7-22.)  Meany testified, however, that although he was aware of the settlement agreement, he did not read HMI's Amended Bylaws "until a couple of months after they were . . . amended."  (*Id.* at 69:19-70:10; *see also id.* at 44:1-5, 123:1-124:24, 133:16-23.)

Further, again as noted, it is undisputed that Meany's employment agreement as memorialized by the letter dated March 1, 2002 and signed by Meany and Malone was never approved by HMI's Board or its Compensation Committee.  (*Id.* at 133:24-136:17; Walker Aff. at

---

[13] The severance provision provided that:

In the event [HMI] terminates your employment for any reason other than for cause, as defined below, you shall receive the following severance benefits:

a)      You shall receive a full years salary of $150,000, or such greater amount which equals your annual salary then in effect.

b)      All awards granted to you under the Plan which have not yet vested shall immediately vest.

Termination for cause shall mean termination of your employment by [HMI] due to your (i) malfeasance or (ii) conviction of, or admission to, a crime involving moral turpitude.

(*Id.*)

¶¶ 10-11; *see generally* Docs. 24, 28.)  In fact, Meany has not pointed to any portions of the record establishing that the Board or Compensation Committee ever had knowledge of, saw, or considered Meany's employment agreement, let alone had approved it.  (*See generally* Docs. 24, 28.)  Instead, Meany testified that he assumed that the agreement had been approved, because Malone had signed it.  (Meany Dep. at 213:14-15; *see also id.* at 134:9-135:21.)  Meany also argues that he assumed the agreement was not in dispute, because he provided services pursuant to it for nearly three years thereafter.  (*Id.* at 136:2-17, 213:8-18.)

## C.    MEANY'S EMPLOYMENT AT HMI COMMENCING ON MARCH 1, 2002

On March 1, 2002, Meany became a full-time employee of HMI, assuming the roles of vice president, corporate secretary, and general counsel.  (*Id.* at 20:19-23.)  At all times from the start of his employment through January 31, 2005, Meany was paid his salary and received benefits according to the terms of his employment agreement as memorialized by the letter dated March 1, 2002 and signed by Meany and Malone.  (*Id.* at 136:2-17, 213:8-18, Exs. P & Q; *see also* Foley Dep. at Ex. 11.)  As noted, Meany also received an increase in his salary in the fall of 2003, which raised his annual salary from $150,000 to $157,500.  (*Id.*)

## D.    THE CESSATION OF MEANY'S EMPLOYMENT WITH HMI IN 2005

On January 28, 2005, Foley, who at this time had replaced Malone and was HMI's Chairman of the Board and CEO, sent a letter to Meany proposing a new employment agreement.  (Foley Dep. at 93:3-96:17, Ex. 2B.)  Foley's January 28, 2005 letter proposed the following notable terms and conditions:

- Meany's new position was to be administrative services coordinator, and he was not to hold an officer's position within HMI;

- Meany's new salary was to be $70,000; and

-14-

- Meany's term of employment was to be "at will."

(*Id.* at Ex. 2B.)  In addition, the letter included a provision stating that the proposed agreement "supersede[d] any prior employment agreement, written or oral, between you and [HMI], specifically including the March 1, 2002 letter agreement between you and [HMI]." (*Id.* at 94:3-24, Ex. 2B.)

At the time Foley's January 28, 2005 letter was sent, several terms of Foley's proposed employment agreement already had been implemented by Foley and HMI without Meany's knowledge or agreement.  (*Id.* at 93:3-100:8, 132:1-133:5, Ex. 10; Meany Dep. at 24:9-25:8, Ex. P.)  Specifically, HMI reduced Meany's annual salary from $157,500 to $70,000 effective February 1, 2005.  (*Id.*)

In response to Foley's letter and HMI's actions, Meany sent a letter to Foley on February 14, 2005, rejecting Foley's proposed agreement.  (Foley Dep. at 106:16-108:14, Ex. 3; Meany Dep. at Ex. B.)  Meany wrote that he considered the changes contemplated in Foley's proposed agreement and the other changes already being implemented without his consent to be a breach of his employment agreement with HMI dated March 1, 2002.  (Foley Dep. at Ex. 3; Meany Dep. at Ex. B.)  Meany added that the breach of his agreement would constitute a termination of his employment and require payment according to the severance provision in his March 1, 2002 agreement.  (*Id.*)  And finally, Meany suggested setting a termination date of March 31, 2005, with severance payments to begin thereafter.  (*Id.*)

Foley did not respond to Meany's February 14, 2005 letter.  (Foley Dep. at 108:11-14.)

Meany therefore sent a second letter to Foley on March 10, 2005.  (*Id.* at Ex. 4; Meany Dep. at Ex. B.)  In this letter, Meany reiterated that he did not consent to a reduction in pay, and he noted that HMI's unilateral reduction in his compensation was a breach of his employment agreement

-15-

dated March 1, 2002.  (*Id.*)  Meany also wrote that he expected to be compensated at his annual rate of $157,500 until his severance payments began.  (*Id.*)  In this regard, Meany wrote:

> Please refer to my letter of February 14 for my proposal regarding the transition of my duties and the start of my severance payments.  I have not received your answer.  Alternatively, I will continue to be an employee of HMI with my 2004 compensation, all current benefits and the restoration of my titles and authority as specified in my employment agreement. . . .

(*Id.*)

On March 18, 2005, Foley responded by sending a letter to Meany.  (Foley Dep. at 114:23-115:6, Ex. 5; Meany Dep. at Ex. B.)  Foley first wrote that he was disappointed that Meany was rejecting the proposed changes in his position and responsibilities.  (Foley Dep. at Ex. 5; Meany Dep. at Ex. B.)  Foley then wrote that HMI was prepared to accept Meany's resignation effective on March 31, 2005 and offered a proposal to resolve the "severance issues" by paying Meany $70,000:

> I believe that the severance issues can be resolved and in that regard HMI will make an offer to pay a total of $70,000 severance payment in three payments, 2 payments of $25,000 on April 30th and Sept. 30, 2005 and one final payment of $20,000 on March 31, 2006.  This arrangement would allow you to be maintained on HMI health coverage for an additional year.
>
> I believe that this represents a fair resolution of the issues before us.  It would relieve you of any duties and allow [HMI] to proceed with its cost rationalization program.
>
> I await your acceptance of this proposal.

(*Id.*)

On March 24, 2005, Meany responded by sending a letter to Foley, rejecting his proposal. (Foley Dep. at Ex. 6; Meany Dep. at Ex. B.)  Meany wrote that his employment agreement entitled him to payment of severance in the amount of $157,500.  (*Id.*)  Meany, however, indicated that he would consider payment of his severance in equal installments over a one-year period.  (*Id.*)

-16-

Foley did not respond to Meany's March 24, 2005 letter.  (Foley Dep. at 135:16-136:4.)

Receiving no response, Meany then sent another letter to Foley on April 7, 2005.  (Foley Dep. at 136:6-137:1, Ex. 7; Meany Dep. at Ex. B.)  Meany reiterated that the amount of his severance was fixed at $157,500 and was not a negotiable item, even though he was willing to negotiate the terms of his payment as outlined in his March 24, 2005 letter.  (Foley Dep. at Ex. 7; Meany Dep. at Ex. B.)  Meany then requested a response by April 15 in regards to the payment options that he previously presented, noting that he would begin to take the necessary steps to enforce his rights under his employment agreement if a satisfactory response was not forthcoming.  (*Id.*)  And finally, Meany emphasized that he was not resigning, but rather, he was being terminated:

> I want to correct one statement you made in your letter of March 23.[14]  You stated that [HMI] is prepared to accept my resignation as of March 31, 2005.  At no time have I resigned or offered to resign.  I did suggest in my February 14 letter that I use the balance of February (after my vacation) and March for transition matters, with the severance taking effect April 1.  You did not respond to this transition suggestion, and I am continuing to provide services to [HMI] and its employees and distributors.  Any termination date for my services must be part of an overall settlement of employment issue.

(*Id.*)

Foley, however, never responded to Meany's April 7, 2005 letter.  (Foley Dep. at 136:10-137:7.)

Further, as of April 1, 2005, HMI had stopped paying Meany his salary and refused to pay Meany any severance.  (*See* Meany Dep. at Ex. P.)  Meany then ceased performing work for HMI on approximately April 20, 2005.  (*Id.* at 23:7-24:8.)

---

[14] The record in this action does not include a letter from Foley dated March 23, 2005. The Court assumes that, in the absence of any suggestions from the parties, Meany was referring to Foley's letter dated March 18, 2005, in which Foley wrote that HMI was prepared to accept Meany's resignation "effective as stated on March 31, 2005."  (Foley Dep. at Ex. 5.)

-17-

### III.  LAW & ANALYSIS

As a preliminary matter, the Court will first address the parties' motions regarding Meany's request for leave to file yet another brief with respect to HMI's Motion for Summary Judgment. (*See* Docs. 30, 33-36.)  The Court will then proceed to analyze the merits of HMI's summary judgment motion.  (Doc. 22.)

**A.**   **MEANY'S MOTION FOR LEAVE TO FILE A SUR-REPLY AND HMI'S MOTION TO STRIKE MEANY'S SUR-REPLY AND AFFIDAVIT**

As noted, after the parties filed supplemental briefs regarding HMI's Motion for Summary Judgment (*see* Docs. 28, 29), Meany filed the pending Motion for Leave to File a Sur-Reply, attached the sur-reply, and later filed an affidavit in support of the sur-reply (*see* Docs. 30, 33-34). In his motion, Meany argues that leave to file the sur-reply is necessary, because HMI made false statements of fact and presented new evidence in its supplemental brief – namely, the letter dated February 27, 2002 to Meany from Nohra, in which Nohra states that she was forwarding Meany copies of HMI's Bylaws as amended on February 14, 2002, and Gurbst's declaration dated August 15, 2008 discussing Nohra's letter.

HMI then opposed Meany's Motion for Leave to File a Sur-Reply (Doc. 35) and filed the pending Motion to Strike Meany's Sur-Reply and Affidavit (Doc. 36).  HMI argues that the Court should not grant Meany leave, because HMI did not advance any new arguments in its supplemental brief.

Meany has not filed a reply to HMI's opposition, nor filed an opposition to HMI's motion to strike.

Upon review of the parties' arguments and the applicable law, the Court exercises its sound discretion to conclude that Meany's Motion for Leave to File a Sur-Reply should be denied and that

HMI's Motion to Strike Meany's Sur-Reply and Affidavit should be granted.  While the Sixth Circuit has noted that it is an abuse of discretion for a district court to grant summary judgment without allowing the non-moving party an adequate opportunity to respond to new evidence that is presented in a reply brief – at least when the district court relies on the new evidentiary submissions, *Seay v. TVA*, 339 F.3d 454, 480-82 (6th Cir. 2003) ("When new submissions and/or arguments are included in a reply brief, and a non-movant's ability to respond to the new evidence has been vitiated, a problem arises with respect to Federal Rule of Civil Procedure 56(c)."), the Court here, as will be discussed below, finds that there are genuine issues of material fact that preclude a grant of summary judgment to HMI, even without considering Meany's sur-reply or his affidavit, *see Fatute v. Sumco USA*, No. C-1-06-184, 2007 U.S. Dist. LEXIS 95393, at *5-6 (S.D. Ohio Dec. 19, 2007) (denying non-moving party's motion to strike an affidavit attached to the moving party's reply, because the court was denying the summary judgment motion).  Accordingly, it is not necessary to provide Meany an opportunity to respond to the new evidence that HMI first presented in its supplemental brief, and the Court denies Meany's Motion for Leave to File a Sur-Reply (Doc. 30) and grants HMI's Motion to Strike Meany's Sur-Reply and Affidavit (Doc. 36).  The parties' positions with respect to the critical issues and evidence presented already have been exhaustively analyzed and argued in the parties' previous briefs, which notably already includes one supplemental brief from each party.

**B.**     **HMI'S MOTION FOR SUMMARY JUDGMENT**

    **1.**     **Legal Standard**

HMI has filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c) governs summary judgment motions and provides in pertinent part:

The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).  A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  Thus, in most civil cases, the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Upon filing a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the non-moving party's claim.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 & n.12 (6th Cir. 1989). The moving party, however, is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the moving party relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In response, if the moving party establishes the absence of a genuine issue of material fact, to defeat summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  In this regard, "Rule 56 does not impose upon the district court a duty to sift through the record in search of

-20-

evidence to support a party's opposition to summary judgment"; rather, "Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379-80 (6th Cir. 2007) (citation omitted).  Moreover, the non-moving party must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87.

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party.  *Id.*; *see also Anderson*, 477 U.S. at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict – whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.") (emphasis in original) (internal quotations omitted).

**2.      Genuine Issues Of Material Fact Preclude Summary Judgment**

HMI contends that its motion for summary judgment on Meany's breach of contract claim should be granted for two reasons:  (1) Meany cannot establish the first required element necessary to succeed on his breach of contract claim under Ohio law – namely, there was not a valid and

binding employment agreement between Meany and HMI;[15] and (2) Meany should be equitably estopped from attempting to enforce an agreement that he knew to be invalid, because he negotiated and drafted the terms of the agreement more than ten months after HMI amended its Bylaws.

In reviewing HMI's Motion for Summary Judgment, however, the Court notes at the outset that the parties' briefs contain very little legal analysis or examination of the facts in the context of the relevant legal standards.  Instead, the parties primarily discuss and debate the facts themselves, which generally tends to suggest that there is a genuine dispute over the facts and that this case would not be appropriate for resolution on summary judgment.

And, in fact, after a thorough review of the parties' briefs, the evidence in the record, and the applicable law, this Court concludes that, upon viewing the evidence in the light most favorable to Meany – as this Court must under Fed. R. Civ. P. 56 – there are genuine issues of material fact that preclude granting HMI's summary judgment motion.  Specifically, the Court finds that there are genuine issues of material fact as to:  (1) when Meany and Malone reached an agreement; and (2) whether Meany should be equitably estopped from enforcing his employment agreement.

  **a.**  **There Is A Genuine Issue Of Material Fact As To When Meany And Malone Reached An Agreement**

As discussed, the parties vigorously dispute when Meany and Malone actually reached an agreement on the terms of Meany's employment with HMI.  In short, HMI asserts that Meany and

---

[15] To succeed on a claim for breach of contract under Ohio law, a plaintiff must prove the following four elements by a preponderance of the evidence:  (1) the existence of a binding contract or agreement; (2) the non-breaching party fulfilled its contractual obligations; (3) the breaching party failed to fulfill its contractual obligations without legal excuse; and (4) the non-breaching party suffered damages as a result of the breach.  *See Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 563 n.3 (6th Cir. Ohio 2007) (citing *Lawrence v. Lorain County Cmty. Coll.*, 713 N.E.2d 478, 480 (Ohio App. Ct. 1998)); *see also MMK Group, LLC v. SheShells Co., LLC*, 591 F. Supp. 2d 944, 963 (N.D. Ohio 2008).

-22-

Malone reached an agreement only after HMI's Bylaws were amended on February 14, 2002, such that Meany's employment agreement was required to be approved by HMI's Board or its Compensation Committee in order to be valid and binding on HMI under its Amended Bylaws. And, by contrast, Meany asserts that he and Malone orally agreed on the terms sometime prior to February 14, 2002 and that the letter dated March 1, 2002 and signed by Meany and Malone only confirmed what the parties had agreed to earlier, such that the agreement did not need to be approved in order to be valid and binding on HMI.

### i.       The Factual Dispute Is "Material"

Despite the existence of this factual dispute between the parties, HMI first argues that summary judgment should still be granted in its favor, because Meany's "oral contract" theory is a new claim that he did not plead in his Complaint and should not be permitted to assert at this stage of the litigation.  In other words, HMI essentially argues that the factual dispute regarding when Meany and Malone reached an oral agreement is not "material," *i.e.*, its resolution would not affect the outcome of this lawsuit, because Meany does not once mention the words "oral contract" or "oral severance" in his Complaint and has not amended his Complaint to advance this new and alternative theory that HMI breached an oral agreement as required by Fed. R. Civ. P. 15.

The Court, however, rejects HMI's argument, which notably was not supported by any case law.  Meany is not asserting a new or different claim, by arguing his so-called "oral contract" theory, *i.e.*, that the letter dated March 1, 2002 and signed by Meany and Malone is the written memorialization of an agreement previously reached.  Rather, Meany's "oral contract" theory is consistent with the allegations in his Complaint where he alleges that:  (1) after some negotiations, he and HMI entered into an employment agreement that became effective March 1, 2002 (the "Employment Agreement"), a copy of which he attached and incorporated into the Complaint

(Compl. ¶ 11); and (2) the text of the incorporated Employment Agreement, which provides that its purpose is "to confirm the terms and conditions" of Meany's employment with HMI and specifically acknowledges that the terms and conditions outlined therein were believed to be "consistent with the prior discussions" between Meany and Malone, suggests that there had been a previous oral agreement and that the Employment Agreement was merely a written memorialization of that agreement (Doc. 1-2).  In other words, by arguing his "oral contract" theory, Meany is not asserting that HMI breached a separate and distinct oral agreement, but instead, as he alleges, that HMI breached the terms of the March 1, 2002 letter signed by Meany and Malone, which itself suggests was a memorialization of the parties' previous oral agreement.  *Cf. Asadorian v. Demirjian*, 2008 Ohio 5489 (Ohio Ct. App. 2008) (holding that an oral agreement later memorialized in a letter that was incorporated into the complaint constituted a written contract, as opposed to an oral contract, for purposes of determining which statute of limitations governed under Ohio law).  Further, the Court also notes that Meany's Complaint was more than sufficient to give HMI notice of his "oral contract" theory under the liberal pleadings standards established by Fed. R. Civ. P. 8, such that Meany was not required to amend his Complaint under Fed. R. Civ. P. 15 for the Court to consider his arguments.  *Cf. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) ("[Rule 8's] simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.").  The Court therefore finds that the factual dispute regarding when Meany and Malone actually reached an agreement is "material."[16]

---

[16] HMI does not otherwise contest that this factual dispute is material.  Specifically, except in the context of its equitable estoppel argument addressed below, HMI does not contest that Meany's employment agreement would be valid and binding on HMI, if Meany and Malone reached an agreement before the Bylaws were amended on February 14, 2002.  (*See* Malone Dep. at 75:12-20.)

-24-

### ii.    The Factual Dispute Is "Genuine"

HMI next argues that, even if the Court were to consider Meany's "oral contract" theory, its summary judgment motion should still be granted, because there is no evidence in the record that Meany reached an oral agreement with Malone prior to the amendment of HMI's Bylaws on February 14, 2002.  In other words, HMI essentially argues that the factual dispute regarding when Meany and Malone reached an agreement is not "genuine," *i.e.*, upon viewing the record in the light most favorable to Meany, reasonable jurors still could not find by a preponderance of the evidence in Meany's favor on this issue.  In this regard, as noted, HMI contends that the deposition testimony of Meany and Malone, as well as the documentary evidence, all demonstrate that Meany continued to negotiate the terms of his employment after HMI amended its Bylaws and at least until December 31, 2002.

The Court, however, once again rejects HMI's argument.  Although the question is relatively close, the Court finds that, upon viewing the record in the light most favorable to Meany – as it must when resolving a motion for summary judgment – Meany has presented "more than a scintilla of evidence" and has established that a "genuine" issue exists as to whether Meany and Malone reached an agreement prior to the amendment of HMI's Bylaws on February 14, 2002.  Specifically, contrary to HMI's position, the referenced deposition testimony of Meany and Malone, as well as the documentary evidence, does provide sufficient evidence upon which a jury could reasonably find for Meany on this issue.

First, the Court's examination of the referenced deposition testimony from Meany and Malone – the two individuals who actually negotiated the agreement – reveals that there is a "genuine" issue.  As discussed, it is undisputed from Meany's and Malone's testimony that they began to negotiate Meany's employment agreement with HMI in approximately late November or

early December of 2001.  (Meany Dep. at 54:7-13, 94:7-23; Malone Dep. at 72:4-20, 74:15-24.)

Further, both Meany and Malone testified that the letter dated March 1, 2002 and signed by Meany

and Malone was merely a memorialization of what the parties previously had agreed to sometime

after negotiations commenced in late 2001.  (Meany Dep. at 51:15-52:19, 54:3-13, 94:7-23, 97:4-22;

Malone Dep. at 72:4-20, 74:15-24).[17]  Accordingly, Meany has set forth competent evidence that

he and Malone reached an agreement at some point between late November or early December of

_____

[17] For example, Meany testified in relevant part:

A.      We discussed – it was around that time that we had started discussing my
        employment back in November or December, but we hadn't finalized
        anything.

Q.      Okay.  And everything was finalized by March 1, 2002 then?

A.      Yeah, by March –

. . .

Q.      Anything relating to your employment was worked out on or around
        March 1, 2002 when your contract was – purported contract was –

A.      It had been decided by that time, yes.

(Meany Dep. at 97:4-22.)

Likewise, Malone testified in relevant part:

Q.      You have Exhibit B in front of you, which is the –

A.      I do.

Q.      – March 1, 2002 letter. . . . Had you and John [Meany] previously
        negotiated his employment relationship?

A.      Yes.

Q.      Was this letter nothing more than a confirming document of what the
        agreement was?

A.      Yes.

(Malone Dep. at 72:4-20.)

-27-

2001 and on or around March 1, 2002.[18] And while HMI correctly notes that Meany never explicitly testified at his deposition that he and Malone reached an agreement before HMI's Bylaws were amended on February 14, 2002 and that much of Meany's cited testimony merely refers to passages indicating that general negotiations began in late 2001, there is no affirmative evidence from Meany's or Malone's deposition testimony that they did *not* reach an agreement prior February 14, 2002.  Remarkably, this critical question was never even asked by either party at Meany's or Malone's depositions.[19] Thus, upon construing the evidence from Meany's and Malone's deposition testimony and all reasonable inferences therefrom in favor of Meany, the Court concludes that a jury could reasonably return a verdict for Meany and find that the agreement was in fact reached prior to February 14, 2002.

Moreover, the Court's conclusion that a "genuine" issue exists is buttressed by examining the relevant documentary evidence in the record.  While HMI does present documentary evidence tending to show that Meany continued to negotiate the terms of his employment after HMI amended its Bylaws and even until December 31, 2002 on some issues, HMI does not provide evidence that forecloses the possibility that Meany and Malone reached an agreement before February 14, 2002.  Further, as pointed out by Meany, much of this documentary evidence also is consistent with

---

[18] In this regard, the Court notes that it does not rely on the portion of Malone's deposition testimony that HMI contends was based upon a false assumption, *i.e.*, the assumption that the memorandum dated December 31, 2002 to Malone from Meany actually should have been dated December 31, 2001.  (*See* Doc. 29 at 6-7; Malone Dep. at 74:25-75:7.)

[19] Notably, a party – even if that party is an attorney – has no obligation to spell out at deposition all the arguments that the party – with the benefit of counsel – could potentially raise to a court.  *Cf. Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 907 (6th Cir. 2006) ("[A]lthough deponents must appear and provide forthright answers, they need not 'volunteer information, explain trial strategies, or reveal privileged information.'" (quoting *In re B-E Holdings, Inc.*, 240 B.R. 751, 753 (Bankr. E.D. Wisc. 1999))).  This is especially so where a question seeks an opinion as to any particular legal theory.

Meany's position that an oral agreement was entered into prior to February 14, 2002 and later memorialized in a written document. For instance, as noted, the text of the letter dated March 1, 2002 and signed by Meany and Malone suggests that there had been a previous oral agreement and that the letter was merely a written memorialization of that agreement, by providing that its purpose was "to confirm the terms and conditions" of Meany's employment with HMI and noting that the terms and conditions outlined therein were believed to be "consistent with the prior discussions" between Meany and Malone. (Meany Dep. at Ex. B.) Similarly, the memorandum dated March 4, 2002 to Malone from Meany discusses drafting a written letter to confirm the terms of a prior agreement that was made between Meany and Malone:

> I spoke to Carl *last week* about my employment *letter*. He indicated that he might do it or have Carolyn do it. An alternative is for me to prepare the letter (after all, I am one of the parties to it) based upon prior employment letters with you, John and Julie and *reflecting our arrangement*. I can review it with Carl or Carolyn if you like and then review it with you prior to your signature. Let me know how you want to proceed.

(Meany Dep. at Ex. E (emphasis added).) Likewise, the memorandum dated March 7, 2002 to Malone from Meany, in which Meany writes that he was enclosing a "proposed employment *letter*" – not a proposed employment *agreement* – and then discusses the procedures for potential changes to the enclosed letter, is consistent with the notion that the parties were merely attempting to memorialize a previous agreement and not that they were still negotiating the actual terms of that agreement. (*See* Doc. 28-3 (emphasis added).)[20] This is true even though the proposed employment

---

[20] The Court rejects HMI's unsupported argument that Meany's and his counsel's opinions regarding the metadata associated with this memorandum and the proposed employment letter should be stricken under Rules 703 and 704 of the Federal Rules of Evidence. (*See* Doc. 29 at 2 n.1.) The properties pages associated with the memorandum and the proposed employment letter clearly indicate that both documents were last saved on March 7, 2002, and no expert testimony is necessary. (*See* Doc. 28.)

letter last saved on March 7, 2002 was not identical to the letter dated March 1, 2002 and signed by Meany and Malone – particularly when the differences between the two letters were so minimal, because some terms that may not have been agreed to previously could have been mistakenly included in the proposed employment letter.  (*Compare* Doc. 1-2 *with* Doc. 28-2.)  And finally, even the December 31, 2002 memorandum to Malone from Meany – the memorandum in which HMI primarily relies – is consistent with Meany's position that a prior agreement existed and that a memorialization of the agreement was prepared several months earlier:

> I am also enclosing two copies of my employment letter.  I have *revised it from the prior letter given to you in order to reflect the actual terms* of my employment from what we had discussed.  *The one part I did **not** change in the letter* but that changed in practice related to my vacation.  In view of my prior 13+ years of service as an employee of HMI (1978-1991) I am requesting four weeks of vacation instead of three weeks.  I don't know that I will take it each year, but I would like to have the option available to me. . . . Assuming that my letter is in order, please bring it with you next week if you come to Cleveland, or mail it to me in Cleveland. . . .

(*Id.* at Ex. C (emphasis added).)  This memorandum also shows that Meany was not necessarily negotiating for four weeks of vacation in December 2002, but instead was requesting that he receive the four weeks of vacation to which the parties previously agreed.  Therefore, as the Court concluded above, upon construing the documentary evidence and all reasonable inferences therefrom – and in combination with the referenced deposition testimony from Meany and Malone – the Court concludes that a jury could reasonably rule in favor of Meany and find that an oral agreement was indeed reached before February 14, 2002, *i.e.*, the factual dispute is "genuine."

* * *

In sum, there is a genuine issue of material fact as to when Meany and Malone reached an agreement on the terms of Meany's employment with HMI.  While HMI presents some evidence suggesting that an agreement was not made before HMI's Bylaws were amended on February 14,

-30-

2002, HMI has not foreclosed that possibility, *see Anderson*, 477 U.S. at 249 (citing *Adickes*, 398

U.S. at 158-59), and the Court's function at the summary judgment stage is "not to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for

trial," *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477

U.S. at 249).  And here, upon construing the evidence in the light most favorable to Meany, the

Court finds that the record HMI has created does not support judgment as a matter of law; the record

here does not foreclose the existence of a valid employment agreement, because Meany has shown

that there is more than a "metaphysical doubt" as to whether there was an oral agreement between

Meany and Malone that was reached prior to February 14, 2002.  Therefore, given the current

record, despite some evidence in support of HMI's contentions, reasonable jurors could find in favor

of Meany on this issue, and summary judgment is inappropriate.

> **b.      There Is A Genuine Issue Of Material Fact As To Whether Meany Should Be Equitably Estopped From Enforcing His Employment Agreement**

As noted, HMI argues that Meany should be equitably estopped from seeking to enforce an

employment agreement that he knew to be invalid.  More specifically, HMI contends that the

evidence demonstrates that Meany negotiated the terms of and drafted his employment agreement

with HMI in or around December of 2002 – well after he had a duty to, and did, know that such an

agreement was invalid under HMI's Amended Bylaws without Board or Compensation Committee

approval.  HMI therefore asserts that Meany may not benefit from an agreement that he created in

violation of his fiduciary duty to HMI as its legal counsel, corporate secretary, and administrator of

its ethics code.[21]

In general, equitable estoppel is a doctrine by which a court may preclude a party from asserting a claim that is contrary or inconsistent with the party's prior acts or omissions.  *See Callander v. Callander*, 2008 Ohio 2305, ¶¶ 28-32 (Ohio Ct. App. 2008) ("[E]quitable estoppel is used to bar a party from raising a defense or objection it otherwise would have, or from instituting an action which it is entitled to institute."); *see also Lubrizol Corp. v. Nat'l Union Fire Ins. Co.*, 200 Fed. Appx. 555, 564-66 (6th Cir. 2006); *Jefferson-Pilot Life Ins. Co. v. Kearney*, No. 1:02-CV-479, 2006 U.S. Dist. LEXIS 2758, at *18-19 (S.D. Ohio Jan. 26, 2006).  The doctrine "is derived from the concept that one cannot change his position once another has acted in reliance thereon and, as an equitable rule, it may be invoked whenever the facts and circumstances warrant."  *Lubrizol Corp.*, 200 Fed. Appx. at 564 (internal quotations omitted).  The purpose of equitable estoppel is "to prevent actual fraud or constructive fraud and to promote the ends of justice."  *Id.* (quoting *Ohio State Bd. of Pharmacy v. Frantz*, 555 N.E.2d 630, 633 (Ohio 1990)).  As such, the doctrine is "applied flexibly depending on the circumstances of a particular case."  *Jefferson-Pilot Life Ins. Co.*, 2006 U.S. Dist. LEXIS 2758, at *18.

To invoke the doctrine of equitable estoppel under Ohio law, however, a party must demonstrate the following four elements:  (1) a factual misrepresentation; (2) that is misleading; (3) that induced actual reliance, which was both reasonable and in good faith; and (4) that caused detriment to the relying party.  *Lubrizol Corp.*, 200 Fed. Appx. at 564 (citing *Helman v. EPL*

---

[21] It is undisputed that Meany did not become HMI's general counsel until March 1, 2002. (Meany Dep. at 20:19-23.)  Meany claims that he was not aware of any change to HMI's Bylaws before undertaking that role.  (*See id.* at 44:1-5, 69:19-70:10, 123:1-124:24, 133:16-23.) While HMI asserts that Meany should have known of the change earlier, there is nothing in the record establishing that he, in fact, did know of it.

*Prolong, Inc.*, 743 N.E.2d 484, 495 (Ohio Ct. App. 2000)); *see also National Coin Laundry, Inc. v. Solon Automated Services, Inc.*, No. 90-3883, 1991 U.S. App. LEXIS 11790, at *12-13 (6th Cir. May 28, 1991) (citing *First Federal Savings & Loan Ass'n v. Perry's Landing, Inc.*, 463 N.E.2d 636, 648 (Ohio Ct. App. 1983)).  In assessing these four elements in the context of a particular case, relevant factors include: (a) the nature of the representation; (b) whether the representation was in fact misleading; (c) the relative knowledge and experience of the parties; (d) whether the representation was made with the intent that it be relied upon; and (e) the reasonableness and good faith of the reliance, given all the facts and circumstances.  *Jefferson-Pilot Life Ins. Co.*, 2006 U.S. Dist. LEXIS 2758, at *19 (citing *First Federal Savings & Loan Ass'n*, 463 N.E.2d at 648)).

Here, the Court first notes that HMI, despite citing a case that references the four elements required to invoke equitable estoppel – *First Federal Savings & Loan Ass'n* – it does not attempt to analyze any of the elements.

Nevertheless, in light of the Court's previous findings, the Court can summarily disregard HMI's argument at this stage of the proceedings, because HMI's argument is founded on the premise that Meany did not reach an agreement before HMI's Bylaws were amended on February 14, 2002, but instead that Meany negotiated the terms of and drafted his employment agreement more than ten months later in or around December of 2002, when he must have known that such an agreement would be invalid under the Amended Bylaws.  Because the Court already has determined that there is a genuine issue of material fact as to when Meany and Malone reached an agreement on the terms of Meany's employment with HMI, the Court must, for purposes of resolving HMI's argument on summary judgment, construe the facts in the light most favorable to Meany and conclude that an agreement was in fact entered into prior to February 14, 2002 and that such an agreement would be valid and binding on HMI.  Accordingly, under those facts, Meany would not

be making a factual misrepresentation, by bringing this breach of contract action or by otherwise asserting his rights under the employment agreement, and he should not be equitably estopped.   In other words, because a reasonable jury could conclude that Meany was merely asserting his right to enforce a valid and binding agreement, there is a genuine issue of material fact as to whether Meany should be equitably estopped, and summary judgment should be denied.

### 3.  The Court Need Not Analyze Meany's Alternative Arguments

Because the Court rejects HMI's two asserted bases for summary judgment and concludes that its motion should be denied, the Court need not consider Meany's alternative arguments that: (1) Malone had the apparent authority to enter into an employment agreement with Meany on behalf of HMI, and Meany detrimentally relied on the assumption that the agreement was in fact valid and that all necessary approvals had been obtained; and (2) HMI should be estopped from asserting its defense that the employment agreement is invalid.

The Court, however, does note that Meany's contention that HMI should be estopped from denying the validity of the employment agreement may well have provided the Court with an additional, independent reason to deny HMI's Motion for Summary Judgment and also may have merit at trial.  First, according to Malone, Foley knew about Meany's employment agreement when the agreement was being negotiated in late 2001 and early 2002 and, in fact, proposed including a term in the agreement that Meany be permitted to work from his home in Chicago.  (Malone Dep. at 31:11-32:8, 54:22-60:6; Doc. 1-2 at ¶ 2.)  Second, HMI compensated Meany according to the terms of the employment agreement for nearly three years during which Meany provided substantial services to HMI and during which Foley was both a shareholder and Board member of HMI with access to HMI's financials.  (Meany Dep. at 136:2-17, 213:8-18, Exs. P & Q; *see also* Foley Dep. at 10:5-12:22, 130:16-132:18, Ex. 11.)   And third, Foley never once indicated that Meany's

-34-

employment agreement was invalid in his 2005 correspondence with Meany and, to the contrary, wrote in his January 28, 2005 letter that the proposed agreement outlined in his letter "supersede[d] any prior employment agreement, written or oral, between you and [HMI], *specifically including the March 1, 2002 letter agreement between you and [HMI]*."  (Foley Dep. at 94:3-24, Ex. 2B (emphasis added).)  These facts may well support the conclusion that equity demands enforcement of Meany's employment agreement and, at minimum, provide additional support for the Court's denial of HMI's Motion for Summary Judgment.  *See Campbell v. Hospitality Motor Inns, Inc.*, 493 N.E.2d 239 (Ohio 1986) (reversing grant of summary judgment where the plaintiff had presented evidence that a defendant corporation's board of directors had actual knowledge of the plaintiff's unauthorized employment agreement and impliedly ratified the agreement by:  (1) accepting and retaining the benefits of the agreement; (2) acquiescing in it; or (3) failing to repudiate it within a reasonable period of time); *see also Young v. Int'l Bhd. of Locomotive Eng'rs*, 683 N.E.2d 420, 425 (Ohio Ct. App. 1996); *cf. Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 566 (6th Cir. 2006).

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court resolves the three pending motions before the Court as follows:

(1)    HMI's Motion for Summary Judgment (Doc. 22) is **<u>DENIED</u>**;

(2)    Meany's Motion for Leave to File a Sur-Reply (Doc. 30) is **<u>DENIED</u>**; and

(3)    HMI's Motion to Strike Meany's Sur-Reply and Affidavit (Doc. 36) is **<u>GRANTED</u>**.

**IT IS SO ORDERED.**

                                        */s/Kathleen M. O'Malley*
                                        **KATHLEEN McDONALD O'MALLEY**
                                        **UNITED STATES DISTRICT JUDGE**

**Dated:  March 27, 2009**

-35-